# NOS. 12-20-00215-CR
# 12-20-00216-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES ALTON SUMRALL, SR.,* *APPELLANT* | § | *APPEALS FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 2* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James Alton Sumrall, Sr. appeals his convictions for driving while his driver's license was invalid and without having established financial responsibility for the vehicle and possession of a handgun in a motor vehicle while driving with a suspended driver's license. Appellant raises four issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by separate informations with driving while his driver's license was invalid and without having established financial responsibility for that vehicle through a motor vehicle liability policy and possession of a handgun in a motor vehicle while driving with a suspended driver's license. Appellant pleaded "guilty" and elected to proceed pro se, although the trial court appointed counsel to attend proceedings on "standby." Appellant waived his right to a jury trial, and the matter proceeded to a bench trial. Ultimately, the trial court found Appellant "guilty" as charged on both counts and sentenced him to confinement for ninety days for each offense. This appeal followed.

In his first issue, Appellant argues that the trial court abused its discretion by failing sua sponte to hold a competency hearing.

## Standard of Review and Governing Law

We review a trial court's failure to conduct a competency inquiry for an abuse of discretion. ***Kostura v. State***, 292 S.W.3d 744, 746 (Tex. App.–Houston [14th Dist.] 2009, no pet.); ***Lahood v. State***, 171 S.W.3d 613, 617–18 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd); *see also **Moore v. State***, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A defendant is not competent to stand trial if he lacks (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2018). If evidence which raises a bona fide doubt as to the defendant's competence to stand trial comes to the trial court's attention, the trial court sua sponte shall "suggest that the defendant may be incompetent to stand trial" and, then, "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004 (West 2018); *see **Fuller v. State***, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency." ***Alcott v. State***, 51 S.W.3d 596, 599 n.10 (Tex. Crim. App. 2001). Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence." *Id.* Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." ***McDaniel v. State***, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003); ***Kostura***, 292 S.W.3d at 747.

## Discussion

In the instant case, there is no evidence that Appellant suffered from mental illness or that he is an individual with any sort of moderate mental or intellectual disability. Appellant first contends that several communications he made to the trial court during trial sufficed to raise a bona fide doubt as to his competence to stand trial to the trial court's attention. The nature of these communications is summarized as follows:

> • Appellant filed a pro se motion, in which he claimed that he was the beneficiary of an express trust and asked for an order to dissolve the trust immediately.

• At the beginning of the trial, when the court asked if the parties were ready to proceed, Appellant asked the trial court to which "James Sumrall" he was referring and told the judge that he was not James Sumrall and the trial judge was, in fact James Sumrall.

• Appellant stated at the beginning of trial that he objected to the court entering a plea on his behalf, that "the court assumed liability[,]" that he did not "agree to jurisdiction[.]"

• Appellant asked about a January 2019 Presidential Executive Order on the trafficking of persons and any law that is considered unconstitutional is null and void from inception.

• Appellant stated that "An individual is a corporation. I do not declare myself as a corporation." The witness replied, "You're a person. Like I said, you're a living, breathing, human being[,] to which Appellant responded, "No, I'm not a person. A person is a corporation."

• During the punishment proceedings, Appellant interjected "I don't want to accept the benefit [of the trust,] but there is a name floating out -- floating around that needs --"

However, Appellant's unusual behavior did not mandate a competency inquiry absent the existence of evidence raising a bona fide doubt as to his present ability to communicate or understand the proceedings. *See Kostura*, 292 S.W.3d at 747. As the State notes in its brief, despite these unusual statements, Appellant participated in trial, made arguments that are subject to a reasonable legal interpretation, and engaged to an effective degree with the witness during cross examination. The fact that Appellant does not have traditional legal training cannot be overlooked. Nonetheless, Appellant had a right to act as his own counsel. *See, e.g.*, *Faretta v. California*, 422 U.S. 806, 832–35, 95 S. Ct. 2525, 2540–41, 45 L. Ed. 2d 562 (1975). Based on our review of the record, Appellant's arguments reasonably can be interpreted to have raised issues related to (1) the trial court's subject matter jurisdiction, (2) the constitutionality of Texas's firearms regulations and licensing scheme, and (3) the State's burden of proof on his identity inasmuch as he declined to concede that issue to the trial court. Lastly, it is undeniable that some of Appellant's statements at trial had a tenuous bearing, at best, on the issues in the case. Nonetheless, we cannot conclude that such statements, when made by a defendant acting pro se, without more, trigger the trial court's duty to investigate that pro se defendant's competency.

In *Faretta*, the United States Supreme Court discussed the matter of pro se representation. *See id.* In so doing, the Court noted that it is "undeniable that in most criminal prosecutions, defendants could better defend with counsel's guidance than by their own unskilled efforts" and that a pro se defendant may hope to realize, if at all, the "potential advantage of a

lawyer's training and experience . . . only imperfectly." *See id.*, 422 U.S. at 832, 95 S. Ct. at 2540.

Here, Appellant made several statements that fairly can be described as "off-topic" legal arguments. And while such statements may appear, at first glance, to those with legal education and years of practical experience to be, as Appellant describes them in his brief, "bizarre," they are less than bizarre when considered in the context of a layperson's attempting to defend himself against criminal charges. The trial court reasonably could have construed these statements in this context as Appellant's lodging every potential "legal" argument he could devise, in the hope that one of the arguments would prove fruitful. Some of Appellant's arguments arguably were relevant but not successful. Others simply were neither artfully put nor relevant. Yet, we are mindful that, unlike this court, the trial court was in the best position to judge Appellant's demeanor and behavior. And we cannot rule out the possibility that the trial court reasonably could have interpreted Appellant's communications before it to be a matter of Appellant's behaving in an obdurate, difficult, or disruptive manner in an attempt to derail the ordinary course of the proceedings. In any event, based on our review of the record, we decline to categorize such statements as "truly bizarre" or indicative that Appellant did not understand the proceedings against him, so as to trigger the trial court's duty to conduct a competency hearing. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Kostura*, 292 S.W.3d at 747.

Based on the foregoing, we cannot conclude that the evidence supports that the trial court should have had any real doubt as to the Appellant's competency. *See Alcott*, 51 S.W.3d at 599 n.10. Therefore, we hold that the trial court did not abuse its discretion by declining sua sponte to investigate Appellant's competence. Appellant's first issue is overruled.

### KNOWING AND INTELLIGENT DECISION TO DECLINE APPOINTED COUNSEL

In his second issue, Appellant argues that his decision to waive his right to counsel and proceed pro se was not made knowingly and intelligently due to his incompetency and, therefore, the trial court abused its discretion in permitting him to proceed pro se.

**Standard of Review and Governing Law**

The standard by which an appellate court reviews whether the defendant "clearly and unequivocally" has invoked his right to represent himself is an abuse of discretion standard,

viewing the evidence in "the light most favorable to the trial court's ruling." ***Rodriguez v. State***, 491 S.W.3d 18, 28 (Tex. App.–Houston [1st Dist.] 2016, pet. ref'd). An appellate court may imply "any findings of fact supported by the evidence" when, as here, the trial judge "failed to make explicit findings." ***Chadwick v. State***, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. This right may be waived, and a defendant may choose to represent himself at trial. ***Faretta***, 422 U.S. at 819–20, 95 S. Ct. at 2533; ***Fulbright v. State***, 41 S.W.3d 228, 234 (Tex. App.–Fort Worth 2001, pet. ref'd). However, a waiver of the right to counsel will not be inferred lightly, and courts will indulge every reasonable presumption against the validity of such a waiver. ***Geeslin v. State***, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980). A waiver of counsel must be made competently, knowingly and intelligently, and voluntarily. ***Collier v. State***, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997) (citing ***Godinez v. Moran***, 509 U.S. 389, 400–01, 113 S. Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)). The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. ***Collier***, 959 S.W.2d at 626; ***Blankenship v. State***, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). The decision is made voluntarily if it is uncoerced. ***Collier***, 959 S.W.2d at 626.

No formulaic questioning is required to establish a knowing and intelligent waiver. *See* ***Blankenship***, 673 S.W.2d at 583. A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" ***Faretta***, 422 U.S. at 835, 95 S. Ct. at 2541; *see also* ***Goffney v. State***, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). The record must be sufficient for a reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation. ***Goffney***, 843 S.W.2d at 585; ***Johnson v. State***, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988).

Courts look at the totality of the particular facts and circumstances of a case in deciding whether the defendant's decision was knowing, intelligent, and voluntary. *See* ***Grant v. State***, 255 S.W.3d 642, 647 (Tex. App.–Beaumont 2007, no pet.). The totality of the circumstances may include the defendant's education or sophistication, the complex or simple nature of the

charge, and the stage of the proceeding. *See id.* at 648. Other considerations include whether the defendant was represented by counsel before trial, whether standby counsel was appointed, and whether the defendant had prior experience with the criminal justice system. *Id.*

**Discussion**

In the instant case, no reporter's record was made of the hearing at which Appellant initially waived his right to counsel. But Appellant does not now contend that no such admonishment took place. Rather, Appellant argues that he could not have knowingly and voluntarily waived his rights because of his incompetency. However, as set forth above, Appellant was not found to be incompetent, nor did the trial court abuse its discretion in declining sua sponte to investigate whether Appellant was incompetent at the time of trial.

At the outset of trial, the trial court made the following statements to Appellant regarding his decision to represent himself:

> But Mr. Sumrall, . . . I recognize you from previous hearings, so you're here, and you have chosen to represent yourself and you have that constitutional right. But out of concern for the fact that this is a legal proceeding, I wanted Mr. Al Charanza to be present in the courtroom. I assume he's been provided with all the appropriate materials by the State, to assist you in representation should you choose to avail yourself of [his] services. Mr. Charanza is board certified in criminal law and is a knowledgeable and experienced attorney, former prosecutor, and is very capable counsel. He is available to assist you. You do not have to consult him if you don't want to. You can proceed on your own.

Furthermore, during the punishment phase of the proceedings, the trial court again addressed the matter as follows:

> Okay. And for the record, I think it's already been established, but Mr. Sumrall has declined to attempt to hire counsel and has elected to represent himself as he is entitled to do. But because this charge or his charges carry a possible penalty of jail time, I felt obligated that competent counsel should be available for Mr. Sumrall to consult at all times if he were willing to do so, so I appointed Mr. Albert Charanza, who is a former military prosecutor in the United States Marine Corps., former Assistant District Attorney in Angelina County, and is board certified in criminal law in the state of Texas, has tried a number of cases and has many years [of] experience, to be available . . . .

Based on our review of the particular facts and circumstances of this case, it is apparent that Appellant was sophisticated enough to understand the nature of the proceedings, which involved straightforward matters of minimal complexity, i.e., charges of driving with a suspended license and unlawful possession of a firearm. Appellant's driving record was

6

admitted at trial, which demonstrated that this was not the first time Appellant had been accused of committing a traffic offense. As set forth previously, Appellant participated in trial proceedings, made arguments that, although not successful, are subject to a reasonably legal interpretation, and engaged to an effective degree with the witness during cross examination. Furthermore, the trial court appointed standby counsel at both the guilt-innocence and punishment phases of the proceedings. In so doing, the trial court relayed standby counsel's qualifications to Appellant, by which it implicitly conveyed to Appellant that he lacked the experience possessed the qualified attorney made available to him, and further, that this attorney was standing by to assist Appellant because the proceedings would not be tailored to Appellant's layman's experience level.[1] *See Blankenship*, 673 S.W.2d at 583 (no formulaic questioning required to establish knowing and intelligent waiver). Throughout the course of the proceedings, Appellant never flagged in his intent to act pro se, and there is no evidence that suggests that his decision to represent himself or continue in that course of action resulted from coercion.

We remain mindful that the state cannot force a defendant to have a lawyer. *See Faretta*, 422 U.S. at 820–21, 834, 95 S. Ct. at 2533–34. A defendant has a constitutional right to represent himself. *Id.*, 422 U.S. at 819–20, 95 S. Ct. at 2533–34. Here, the record reflects that Appellant elected to represent himself, and, under the particular facts and circumstances of this case, we hold he made his decision voluntarily, knowingly, and intelligently. *See Grant*, 255 S.W.3d at 647–48. Appellant's second issue is overruled.

## EVIDENTIARY SUFFICIENCY - UNLAWFULLY CARRYING A WEAPON

In his third issue, Appellant argues that the evidence is legally insufficient to support his conviction for unlawfully carrying a weapon.

### Standard of Review and Governing Law

The *Jackson v. Virginia*[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional

---

[1] During the punishment phase of the proceedings, standby counsel addressed the court at length in an attempt to elucidate the trial court about Appellant's statements regarding his unwillingness to "accept the benefits of the trust."

[2] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

7

minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.***

**Discussion**

In order to prove that Appellant was "guilty" of unlawfully carrying a handgun, the State was required to demonstrate that Appellant intentionally, knowingly, or recklessly carried, on or about his person, a handgun while engaged in criminal activity, other than a Class C misdemeanor, that is a violation of law or ordinance regulating traffic. *See* TEX. PENAL CODE ANN. § 46.02(a-1) (West Supp 2020). However, Section 46.02 does not apply to a person who is "traveling." *Id*. § 46.15(b)(2) (West Supp. 2020).

At trial, Angelina County Constable of Precinct 1 Tom Selman testified that he stopped Appellant, who was driving a white Dodge pickup truck in Angelina County, Texas on December 20, 2019, because the license plates on the truck were expired and he suspected an issue with the vehicle's registration. Selman testified that he discovered Appellant's driver's license had been suspended and, further, Appellant had a prior conviction for the same offense. He also stated that Appellant told him he did not have insurance for the vehicle. As a result, Selman placed Appellant under arrest. Selman stated that because he also smelled the odor of burned marijuana emanating from the vehicle, he conducted a search of the vehicle. As he did so, Selman asked Appellant if he had any weapons, to which Appellant answered affirmatively and, further, informed Selman that a pistol was located in a first aid kit behind the driver's seat. Thereafter, Selman discovered a .22 caliber pistol located in a first aid kit in the location Appellant described.

*"On or About His Person"*

Appellant first argues that the handgun was not discovered "on or about his person." The phrase "on or about [his] person" has been construed to mean "[nearby], close at hand, convenient of access, and within such distance of the party so having it as that such party could, without materially changing his position, get his hand on it." *See* ***Courtney v. State***, 424 S.W.2d 440, 441 (Tex. Crim. App. 1968) (also noting that proof that accused carried a pistol in car's glove compartment warrants conviction for carrying a pistol "on or about his person"); *see also* ***O'Leary v. State***, 494 S.W.2d 841, 842 (Tex. Crim. App. 1973) (pistol located on shelf behind driver's seat); ***Freeman v. State***, 864 S.W.2d 757, 759 (Tex. App.–Houston [1st Dist.] 1993, pet. ref'd (handgun was "on or about" appellant's person where it was discovered in briefcase behind driver's seat). Here, the evidence demonstrates that Selman discovered the handgun in a first aid kit behind the driver's seat of the vehicle, the same location where Appellant told him it was

9

located. Therefore, we conclude that the handgun was discovered "on [Appellant's] person." *See* ***Courtney***, 424 S.W.2d at 441; *see also* ***O'Leary*** ,494 S.W.2d at 842; ***Freeman*** 864 S.W.2d at 759.

*"Traveling" Exception*

Appellant next argues that Section 46.02 is inapplicable because the evidence conclusively establishes that he was "traveling" at the time he was stopped. *See* TEX. PENAL CODE ANN. § 46.15(b)(2). Appellant bases this contention on the fact that his driving record, which was admitted into evidence, listed his address in Apple Springs, Trinity County, Texas and the traffic stop occurred in Angelina County, Texas.

Even though the traveling exception has been in existence in Texas since enactment of the first proscription on carrying handguns, what constitutes traveling remains a source of discussion. ***Soderman v. State***, 915 S.W.2d 605, 609 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd, untimely filed). Texas courts never have strictly defined "traveling," but, in applying the rule, generally have considered the distance, time, and mode of travel. *See id.*; *see also* ***Sanchez v. State***, 122 S.W.3d 347, 355–56 (Tex. App.–Texarkana 2003, pet. ref'd). Moreover, if a traveler loiters along the way or unnecessarily deviates from the course of travel, the travel exemption does not apply. ***Soderman***, 915 S.W.2d at 609 (citing ***Payne v. State***, 494 S.W.2d 898, 900 (Tex. Crim. App. 1973) (holding that defendant was not entitled to requested jury instruction where evidence showed that he had deviated from course of travel and loitered)). Ultimately, if the journey is "so short there is no real journey, then one is not a traveler." ***Sanchez***, 122 S.W.3d at 356.

Here, the only evidence upon which Appellant relies is the difference between the county listed as his residence on his driving record and the county in which his vehicle was stopped. There is no evidence of record indicating where his journey originated, how far he traveled before he was stopped, how much farther he planned to travel, or the location of his destination. Without such evidence, the trial court neither could determine whether appellant was "traveling," as he now alleges for the first time on appeal nor, assuming he was traveling, whether, at the time he was stopped, Appellant was loitering or otherwise deviating from the course of his purported travels.

Even if we were to assume that the address on Appellant's driving record alone conclusively establishes the origin of his travel on the date in question, the outcome would not

10

change. The record reflects that Appellant was stopped on State Highway 94 near Hudson, Texas. Hudson, Texas is approximately fourteen miles from Apple Springs, Texas. Although the parties did not present evidence of the distance between these two cities, we note that this geographical fact is not subject to dispute, and we therefore take judicial notice of it. *See generally* **Barton v. State**, 948 S.W.2d 364, 365 (Tex. App.–Fort Worth 1997, no pet.) (recognizing that appellate court "may take judicial notice of the location of counties because geographical facts are easily ascertainable and capable of verifiable certainty"). Therefore, we hold that the mere fact that Appellant is stopped in a car in a neighboring county approximately fourteen miles from where he arguably began his drive, without more, is insufficient to conclusively establish that Appellant is "traveling" pursuant to Section 46.15(b)(2). *See, e.g.*, **Sanchez**, 122 S.W.3d at 356 (evidence that defendant was traveling by automobile for distance of approximately fifteen miles was, as a matter of law, "no real journey"). Appellant's third issue is overruled.

### MOTION TO SUPPRESS

In his fourth issue, Appellant argues that the trial court abused its discretion by failing to rule on his oral motion to suppress. Specifically, Appellant argues that he made this motion to suppress while he cross examined Selman, in pertinent part, as follows:

> Q. Tom, did you see anything dangerous going down the road behind me?
> A. I don't recall seeing anything dangerous on the road.
>
> Q. So it was just that license plate that got your attention?
> A. Yes, sir. It sure was.
>
> Q. This -- this is what we're dealing with is the Texas Code of Transportation, isn't it?
> A. Yes, sir. Texas Transportation Code.
>
> Q. And what do codes apply to?
> A. Codes apply to any and all operators of motor vehicles and conveyances. In the Transportation Code, it -- it regulates the entire movement of traffic on our public highway and transportation system in the State of Texas, as well as it imposes licensing and regulation on the users of the highway system as a condition that they use it.
>
> Q. Just in general language, what does a code -- what is a code?
> A. A code is -- is a law, basically. It's a law.
>
> Q. Or is it the color of law?
> A. No. The color of law is actions that could be perceived that one takes while operating under the law. Color of law is different than just law.

Q. How about perception of law?
A. Perception of law. Well, that's a wide open subject. Perception is up to the perceiver.

Q. With my experiences, I know that policies and codes are usually to employees.
A. Well, there are codes in the State of Texas that deal with employees and the Texas Occupations Code deals with a lot of that. But there are codes for the Water Code and there's a myriad of codes. But the Transportation Code is what regulates the movement of traffic on the highways.

Q. I wasn't involved in traffic.
A. Well, you were operating a motor vehicle on a public highway in the State of Texas. Therefore, the Transportation Code and its provisions apply to you and all the other users of the highway.

Q. Does the Transportation Code have a provision for a road machine?
A. Yes, sir. It does. Yeah, while they're working on the road and involved in construction. But if it's not involved in construction, then road machines, you know, there are exemptions for them when they're doing construction.

Q. Well, a road machine can be about anything, couldn't it?
A. No, sir. They're not motor vehicles. There's a specific definition of motor vehicle and motorcycles and all that. And there's a definition for that, which I can't cite to you by heart because I don't deal with road machinery much.

Q. Motor vehicles deals with transportation. Transportation is commercial commerce.
A. Not necessarily.

. . . .

Q. Does -- excuse me. Does commercial commerce require a license?
A. It depends on the trade, but all operators and users of the highways have to conform to the regulations that are in place that govern the movement of vehicles and govern the operation of drivers. So therefore --

Q. Doesn't an operator or driver, isn't that a hired hand?
A. No, sir. It's not. It's an individual, it's a person. It is a living, breathing, human being. Right now we don't have any regulations for autonomously operated vehicles on the roadway in this state that I know of, but your vehicle was not autonomously operated, you were in control of that vehicle. You were making the decisions of it to go up and down the road. You were driving it, whether you want to call it something else or not, you were the operator, so therefore, you were responsible for making sure you had a license, insurance, registration --

Thus, Appellant contends, the trial court abused its discretion by failing to interpret his cross examination of Selman as an oral motion to suppress because "merely seeing an out of state license plate should not be reasonable suspicion to conduct a traffic stop or investigate the validity of the vehicle registration."

Where a motion to suppress makes broad arguments and otherwise fails to bring the specific matter to the trial court's attention that an appellant later seeks to raise on appeal, error is not preserved. *See Gomez v. State*, 459 S.W.3d 651, 668 (Tex. App.–Tyler 2015, pet. ref'd)

(citing ***Resendez v. State***, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009)); *see also* TEX. R. APP. P. 33.1. Even construing Appellant's cross examination of Selman liberally in the interest of justice, we cannot conclude that it properly could be construed by the trial court as Appellant's making a motion to suppress. Therefore, we hold that the trial court did not abuse its discretion in declining to rule on this purported motion. Appellant's fourth issue is overruled.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial courts judgments.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 25, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

AUGUST 25, 2021

NO. 12-20-00215-CR

**JAMES ALTON SUMRALL, SR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law No. 2

of Angelina County, Texas (Tr.Ct.No. 20-0020)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 25, 2021**

**NO. 12-20-00216-CR**

**JAMES ALTON SUMRALL, SR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the County Court at Law No. 2

of Angelina County, Texas (Tr.Ct.No. 20-0021)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*